# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF PENNSYLVANIA

LUCILLE A. DAVIDSON,
        Plaintiff

v.

Philip J. Rice
        Defendant

Case No. 1:23-CV-340

FILED

NOV 30 2023

CLERK U.S. DISTRICT COURT
WEST. DIST. OF PENNSYLVANIA

## COMPLAINT

1. COMES NOW PLAINTIFF, LUCILLE A. DAVIDSON, AND HEREBY FILES HER ORIGINAL OR VERIFIED ORIGINAL COMPLAINT AGAINST PHILIP J. RICE, DEFENDANT.

2. Plaintiff, Lucille A. Davidson. A natural person, legal and lawful resident of the County of Erie, in the State of Pennsylvania, for over a year and a half.

3. Plaintiff has worked for the Department of Veterans Affairs for almost three years in the County of Erie, in the State of Pennsylvania. Plaintiff has during all this time enjoyed a good reputation, both generally in her employment and in the community.

4. And the Defendant, Philip J. Rice, a natural person, legal and lawful resident in the County of Chautauqua, in the state of New York.

5. This Court has jurisdiction over this matter under 28 USC 1331, Defamation Violations of 28 USC 4101, uphold the Plaintiff's right to proceed as Pro Se in a civil case in this U.S. District Court. Plaintiff's inserted rights and interests exceed $75,000.00, exclusive of interest and costs.

## SUMMARY OF ACTION

7. Defendant and Plaintiff were in a relationship that started on March 25, 2015, and ended on August 12, 2017. For several years, during and after their relationship ended, Defendant has willfully, maliciously, and intentionally engaged in malicious and false statements regarding Plaintiff, as well as willfully, maliciously, and intentionally inflicted emotional distress upon Plaintiff, without just cause with the intent of harming Plaintiff. And as a direct and proximate cause of Defendant's actions, Plaintiff was in fact irreparably harmed by Defendant. Such false Claims have been made in writing and presented to the public, as well as verbally to the Plaintiff, Plaintiff's family, Plaintiff's friends, and other witnesses. Such false statements that were made were regarding Plaintiff's parenting skills, mental health, employment, marriage, religious views, and community membership. With these baseless smears, Defendant has succeeded in sabotaging Plaintiff's good reputation, and parental rights. Defendant has effectively blocked Plaintiff from employment opportunities. Defendant has also engaged in physical, emotional abuse, and stalking towards Plaintiff. Defendant made it very clear to Plaintiff that "she would regret it deeply" if she sought help against Defendant.

Plaintiff makes it a point to not be outside after dark alone and has accepted a position at her place of employment that would allow her to work remotely due to the threats, false allegations, emotional abuse, stalking that Plaintiff has undergone throughout the years from the hands of Defendant.

8. Defendant has a history of abusive behavior towards Plaintiff and family pets. This abuse started on or around September of 2015 in Chautauqua County, New York. Defendant used this behavior to maintain power and control over Plaintiff, and her life. Plaintiff's adult children have witnessed many of these abusive moments when they were teenagers. Defendant would throw items At Plaintiff, then demand Plaintiff to replace items that were broke or damaged due to being thrown, as well as demand that Plaintiff sleep on the floor like the dog, call Plaintiff and her minor children "niggers" because they would eat burgers without bread. Defendant would often wake then minor children up by screaming at Plaintiff stated that she and her children needed to leave and sleep in the car. Defendant would often punish Plaintiff by throwing the family cat upstairs and making it hit against a closet door or picking up the family dog by its collar and hair because Plaintiff didn't appease Defendant's wishes fast enough.

9. On or around April 25, 2018, and continuing to this present date, a witness heard through the phone during exchanges, Defendant threatened Plaintiff with his intent on destroying her reputation, her relationship with her children, her relationship with her family and friends, and employment. Defendant would often state, "I am going to make you regret being you. I am going to make everyone believe you are crazy, including you." Defendant weaponized false statements in a grossly negligent and intentional manner, all said in public with witnesses around and in writing, with the intent to cause harm to Plaintiff. See Virginia v. Black, 538 U.S. 343, 123 S. Ct. 1536 (2003).

10. On or about May 17, 2018, a previous attorney of Plaintiff's heard Defendant make several statements that Plaintiff will never be able to leave the state of New York. This was made Over the phone and the attorney could hear these statements due to the Defendant screaming at Plaintiff. Defendant has used psychological abuse to prevent Plaintiff from defending herself due to the fear that was instilled in her from the years of abuse at the hands of Defendant whether it was physical or emotional. Defendant has called Plaintiff names in public in front of Plaintiff's family, friends, co-workers church members, and strangers. Defendant has actively used Plaintiff as a target for humiliation in public, as well as in written statements about Plaintiff.

11. Since around August 12, 2017, and to this present date, in Chautauqua County, New York. Defendant has actively engaged in making Plaintiff a target for humiliation in public, in front of Plaintiff's family, friends, co-workers, and strangers, as well as in writing. Defendant has continuously violated Plaintiff's right to privacy by having an associate of his take pictures of Plaintiff inside her home, through an outside window, without her knowledge or consent, and then Defendant would talk about them in a public area in which Plaintiff and several witnesses were at. These pictures were of Plaintiff, Plaintiff's minor children's bedrooms, playroom, and bathroom. Plaintiff has since obtained a copy of these photographs, as well as the name of the associate of the Defendant that took the pictures. This happened when Plaintiff and her minor children lived in a rural area in Chautauqua County, New York. Defendant has also had the same accomplice travel to Erie, Pennsylvania to take pictures of Plaintiff's vehicle, as well as her husband's vehicle in the driveway of their residence. These pictures were taken inside the long driveway in which the accomplice had to drive into to take the pictures.

12. On or around August 18, 2022, and continuing to this present date, in Chautauqua County, New York and Erie County, Pennsylvania. Neighbors in

Jamestown, New York had witnessed Defendant's truck sitting across the street from Plaintiff's apartment building. Defendant was sitting there late at night, on several occasions around 10:45 pm in front of the park across from Plaintiff's apartment at the time. Neighbors first noticed the Defendant's truck on their ring doorbell. Neighbors sent Plaintiff the pictures through text of Defendant's truck, as well as his license plate to confirm that it was him.

## FACTUAL DISCLOSURES

13. On or around April of 2018 and continuing to this present date, Defendant has actively and intentionally violated Plaintiff's 28 U.S.C. 4101. The Defendant has made with reckless disregard whether these claims were false or not wherein Plaintiff was not afforded the opportunity to present evidence to counter these claims. Repercussions due to the aforementioned false claims against Plaintiff have caused adverse effects on Plaintiff, including, but not limited to loss of employment and money, parental rights, as well as other civil liberties. Defendant has on countless occasions referred to Plaintiff by name throughout the false allegations so that anyone who was listening would understand that Plaintiff was the one Defendant was talking about.

14. On or around April of 2018, and continuing to this present date. Defendant has intentionally, maliciously, and without just cause slandered Plaintiff's name and reputation in the community by making knowingly false, calculated, malicious, and intentional statements about Plaintiff, and as a direct, and proximate cause thereof Defendant defamed Plaintiff's name and has caused irreparable harm. Defendant has deliberately engaged in providing these false claims in writing and speaking. Defendant has repeatedly stated that Plaintiff has severe mental health issues and is crazy.

Defendant has presented this in writing several times and has stated these false claims to Plaintiff's family, friends, ex-girlfriend of Defendant, Plaintiff's co-workers, Child Protective Services, school employees where their minor child attends school. Defendant has stated that Plaintiff is a "fucking nut job," and "Plaintiff should be locked up in a mental institution," while doing this Defendant would with his hand in a circular motion around his ear state these false claims. Defendant has stated in front of witnesses that Plaintiff should engage in "a Toaster bath". Defendant knows and has read the two Psychological Evaluations that Plaintiff had to undergo due to a former relationship. These Psychological Evaluations were conducted by Corry Counseling in Corry Pa and by Richard Sekula in Erie Pa. These evaluations were conducted by licensed Psychologists. They both came back with "no diagnosis and no referral for counseling or other treatment." Defendant has made it clear that he knows that he is making false claims and has stated that he wants to tarnish Plaintiff's reputation with her family, friends, co-workers, staff at the school, church, and community organization that Plaintiff belongs to. When Plaintiff asked Defendant in front of a witness why he continuously engages in this behavior. Defendant laughed and stated, "Because I can."

Defendant has made it clear verbally and in front of Plaintiff, as well as witnesses, that he enjoys tarnishing Plaintiff's reputation. The false allegations offered up by Defendant have cost Plaintiff a great deal of employment opportunities, parental rights and other civil liberties/fundamental rights. Defendant has weaponized these false allegations and Plaintiff was denied several potential employment opportunities due to the fact that these claims were stated in public and in earshot of several co-workers. This has caused Plaintiff to undergo emotional duress because these claims have had an impact on her personal and professional relationships. Plaintiff does not have any mental health issues and should not have to undergo this treatment by Defendant. As a proximate result of the above-described statements and actions by Defendant, Plaintiff has suffered loss of her good reputation, shame, mortification, and injury to her feelings. These allegations were clearly done with malice, hatred and ill will toward the Plaintiff.

15. On or about April 17, 2018, and continuing to this present date, Defendant has intentionally created a false light of Plaintiff's religion and made a public ridicule of Plaintiff and her religious views during several encounters. These encounters started on or around March 6, 2017, in Chautauqua County, New York, in places such as Walmart in Lakewood, New York, and The Panama Diner in Panama, New York.

Plaintiff was raised in a Greek Catholic home, and for the past twenty-nine and a half years has attended faithfully a Christian church. Plaintiff has held volunteer positions in this church for over seven years. Defendant was aware since March 23, 2015, of the religious views of Plaintiff and that she holds those dear to her. Defendant has made many outrageous claims about what Plaintiff does in the church, and the Views of the church. Defendant has stated that Plaintiff is a part of several wives, as well which is why Plaintiff has several husbands. This humiliation due to witnesses asking questions about what Plaintiff's religion believes and that Plaintiff is not a part of several wives and does not have several husbands has created many uncomfortable situations. Plaintiff has been asked by strangers what the views of her religion were, and if she knew any of the "Sister Wives" from the television show. See Obergefell v. Hodges 135 S. ct 2584 (2015), Washington v. Glucksberg 521 U.S. 702 (1997).

16. Since on or about April 17, 2018 in Chautauqua County, New York, and continuing to this date, Defendant has knowingly and intentionally violated 28 U.S.C. 4101. Defendant has continuously questioned and made it a public question of the validity of Plaintiff's graduate degree. Defendant has stated that since Plaintiff received her degree online it was not an actual degree. Defendant has stated on several occasions that he was going to call Plaintiff's employer to tell them it was a fake degree.

Plaintiff's employer checks all references and education that each employee presents on their resumes and applications. Plaintiff received a degree online due to being a single mother and working full time. The degree was obtained in August of 2005. Since that time Plaintiff Has held several positions because of the validity of this degree. Plaintiff had worked for several years for Beacon Light Behavioral Health Services (2010-2012) as a therapist, as well as a Psychiatric Rehabilitation Specialist, Plaintiff worked for Warren General Hospital (2011-2014) as a Psychological Technician, Plaintiff worked for Wagner Behavioral Health Services (2012) and assisted with groups for Sex offenders in the Warren County area.

17. Defendant has on or around April 17, 2018, in Chautauqua County, New York, and continuing unto this present date, in Chautauqua County, New York. Defendant has knowingly and intentionally violated 28 U.S.C. 4101. Defendant has engaged in retaliatory actions against Plaintiff. Plaintiff has lost employment opportunities, as well as had to take a decrease in hours to accommodate to actively fight against these defamatory claims that were made in public with witnesses, in writing by Defendant.

18. On or around September 12, 2019 and continuing to this present date, in Chautauqua County, New York and Erie County, Pennsylvania. Defendant has knowingly and intentionally violated 28 U.S.C. 4101. Defendant has stated to Plaintiff in front of Witnesses, that Plaintiff is a part of an organization that is

planning on taking over the world. Defendant has stated that this Organization was what a television series was the idea for, "The Handmaid's Tale." Defendant has stated that Plaintiff engages in illegal acts when attending these meetings. Defendant has often stated in front of witnesses that Plaintiff and her organization engage in animal sacrifices, as well as drinking goat's blood. These actions by Defendant are libelous on its face. It clearly exposes Plaintiff to hatred and ridicule. Statements are libelous on its face, it charges Plaintiff with engaging in events and actions that are unrealistic to most people and against all that the organization believes. Defendant has made this statement several times in front of a couple of the ladies who belong to this organization. Plaintiff has been and is still in good standing in Lakewood New York's Order of The Eastern Star for a couple of years, Plaintiff is in good standing in Erie Pennsylvania's Order of The Eastern Star since she became a member. Plaintiff has enjoyed assisting with the charitable functions that these organizations provide to people in the community. Plaintiff has not engaged in several functions due to Defendant stating these false claims.

19. Since on or about November 2020 and continuing to this present date, in Chautauqua County, New York. Defendant has knowingly and intentionally violated 28 U.S.C. 4101, by presenting a false or fraudulent claim to a school that their minor child attends, teachers, others in the community as well as to Child Protective Services (CPS).

This has caused many violations of Plaintiff's fundamental rights, employment due to having to try to defend these false allegations, parental rights were sabotaged, reputation was severally damaged. Plaintiff had an indicated report against her by New York Child Protective Services (CPS) due to claims that Defendant stated about Plaintiff during an investigation by Child Protective Services (CPS) that started in part by the findings of the Licensed Therapist whose services were being utilized. Child Protective Services (CPS) investigation was started against Defendant. Plaintiff fought the indicated report on June 28, 2023, and won. These false claims, although only once been allowed to be proven false, still have had a detrimental effect on the Plaintiff's life and reputation. Plaintiff still does not work in her field; the minor child's school has made it difficult for Plaintiff who was always actively engaged in all of her children's education and school activities to be a part of.

20. Since on or around May 29, 2022, in Chautauqua County, New York, and Erie County Pennsylvania. Defendant has violated Plaintiff's 28 U.S.C. 4101. Defendant has stated in front of many people that Plaintiff is not legally divorced or remarried. Defendant has stated in front of witnesses that he was going to make sure Plaintiff is charged with bigamy. Defendant has actively engaged in challenging the validity of Plaintiff's marriage to her new husband. Defendant has made it that Plaintiff has had to prove, on several occasions, with original marriage license that the marriage to current

spouse was legal, as well as the original divorce decree between the former spouse and Plaintiff. And that Plaintiff was/is not currently married to anyone else. Defendant has stated and continues to this date since April 17, 2018, in Chautauqua County, New York, that Plaintiff has currently several husbands due to her religion. Plaintiff has been married before and after a legal final divorce decree, Plaintiff has since remarried.

21. The substantial danger to Plaintiff's reputation from Defendant's false statements is irreparable. Defendant knew that such statements were false and continued to use them deliberately. By stating or writing these statements, they have caused direct harm to Plaintiff's reputation.

22. The stalking that Plaintiff has undergone from Defendant has caused Plaintiff undue stress. Defendant had no reason or right to subject Plaintiff to the stress that was caused by Defendant's actions.

23. As a direct and proximate result of these false statements and the stalking by Defendant, Plaintiff has suffered damages including injury to her reputation, embarrassment, humiliation, and emotional distress.

24. Defendant's actions were malicious, willful, and wanton, and evidence a conscious disregard for Plaintiff's constitutional rights.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the court enter an award in Plaintiff's favor, and against Defendant, as follows:

(1) awarding Plaintiff compensatory damages of not less than $161,000.00, or in such additional amount to be proven at trial;

(2) awarding Plaintiff punitive damages to the maximum extent permitted by the laws of this Commonwealth, but no less than $100,000.00;

(3) an order enjoining Defendant from engaging in further retaliatory conduct toward Plaintiff.

(4) awarding Plaintiff such other and further relief as the Court deems appropriate.


DATED: November 30, 2023

By: *[signature]*

Lucille A. Davidson, Pro Se

## PRAYER FOR RELIEF

Plaintiff, Lucille A. Davidson hereby demands a jury trial on all triable issues.

DATED: November 30, 2023

By: _____

Lucille A. Davidson, Pro Se